# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs December 6, 2013

## IN RE: KIERRA B., ET AL.

### Appeal from the Juvenile Court for Sullivan County (Kingsport)
### No. J37321      Mark Toohey, Judge

---

### No. E2012-02539-COA-R3-PT-FILED-JANUARY 14, 2014

---

The Tennessee Department of Children's Services ("DCS") filed a petition in the Juvenile Court for Sullivan County ("the Juvenile Court") to terminate the parental rights of Amber B. ("Mother") to the minor children Jayden B. and Kierra B. ("the Children," collectively, or, "Jayden" and "Kierra" individually).[1]  DCS also sought to terminate the parental rights of Miguel C. ("Father") to Kierra.[2]  After a trial, the Juvenile Court entered its order finding and holding, *inter alia*, that clear and convincing evidence was proven that grounds existed to terminate Mother's parental rights to the Children pursuant to Tenn. Code Ann. §§ 36-1-113 (g)(2) and (g)(3), and that clear and convincing evidence was proven that it was in the Children's best interest for Mother's parental rights to be terminated.  The Juvenile Court also found and held that clear and convincing evidence was proven that grounds existed to terminate Father's parental rights to Kierra pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and Tenn. Code Ann. § 36-1-102 (1)(A)(iv), and that clear and convincing evidence was proven that it was in Kierra's best interest for Father's parental rights to be terminated. Mother and Father appeal.  Apart from certain grounds of abandonment pertaining to Father which we reverse for lack of adequate evidence, we affirm the judgment of the Juvenile Court terminating Mother's parental rights to the Children and Father's parental rights to Kierra.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed, in Part, and, Reversed, in Part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

---

[1]Jayden was born in 2001 and Kierra was born in 2003.

[2]Father is the father of Kierra but not of Jayden.

Marsha M. Arnurius, Johnson City, Tennessee, for the appellant, Amber B.

Katherine L. Tranum, Kingsport, Tennessee, for the appellant, Miguel C.

Robert E. Cooper, Jr., Attorney General and Reporter, and, Alexander S. Rieger, Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

Polly A. Peterson, Guardian Ad Litem.


**OPINION**

**Background**

In June 2011, DCS filed a petition to terminate Mother's parental rights to the Children and to terminate Father's parental rights to Kierra. Mother and Father filed answers. In June 2012, DCS filed an amended petition to include the grounds of abandonment by incarcerated parent with respect to Father. This matter was tried on multiple dates over the course of several months in 2012.

In April 2012, Travis Sherffey ("Sherffey"), the Children's initial case manager, testified. Sherffey stated that the Children were brought into custody in February 2008 because, among other reasons, Mother tested positive for cocaine, marijuana and opiates, and lacked adequate housing. A trial home placement was attempted in December 2008 but was unsuccessful because Mother continued smoking marijuana. Permanency plans were entered requiring Mother to address her mental health issues; avoid people with substance abuse issues; perform drug screens; maintain housing for the Children; obtain an income; and resolve her criminal issues. Additional requirements of complying with medication management and avoiding contact with people with criminal histories also were included.

Sherffey testified to Mother's history of drug abuse. According to Sherffey, Mother smoked marijuana in jail in December 2008. At other times, Mother did not properly account for her medication. Sherffey stated that there were irregularities in the accounting of Mother's medication such as there sometimes being too many or too few pills. Mother had sought prescription drugs from a host of facilities despite having a primary care physician. Sherffey also testified that Mother had undergone periods of homelessness.

Sherffey acknowledged that Mother had a good relationship with the Children. Mother has engaged in visitation and cooked for the Children. Mother, however, also has

engaged in destructive behaviors. Sherffey testified that Mother attempted suicide by slicing her wrists in front of the Children in November 2007. Sherffey stated that Mother has continued to threaten suicide at times.

Donna Dingus ("Dingus"), the DCS case manager for the Children who took over in May 2011, testified. Dingus testified that Mother had been evicted from her trailer for failure to pay rent. Continuing her testimony, Dingus stated that Mother had a positive drug screen in late 2011. Dingus testified to criminal charges Mother faced for theft. According to Dingus, Mother's status has not improved.

In May 2012, Christy Woods ("Woods"), a CASA case worker assigned to the Children, testified. Woods stated that Mother did not properly account for her pills. Woods also testified that Mother made comments hinting at suicide.

In September 2012, Dingus testified once again, this time in regards to Father. Father, Kierra's father, was incarcerated at that time. Father pled guilty to possession of cocaine with intent to sell within 1,000 feet of a school, possession of drug paraphernalia, evidence tampering, sale and distribution of cocaine within 1,000 feet of a school, and delivery of cocaine within 1,000 feet of a school. These offenses occurred on two distinct dates in December 2008. Father is serving an eight year sentence. Father is eligible for release in 2016.

Dingus acknowledged that Father had paid child support to Mother from 2005 through February 2008. According to reports known to Dingus, approximately six months to a year before Kierra was brought into custody, Mother forbade Father from seeing Kierra because he was dealing drugs.

In November 2012, the Juvenile Court entered an order finding and holding, *inter alia*, that clear and convincing evidence was proven that grounds existed to terminate Mother's parental rights to the Children pursuant to Tenn. Code Ann. §§ 36-1-113 (g)(2) and (g)(3), and that clear and convincing evidence was proven that it was in the Children's best interest for Mother's parental rights to be terminated. The Juvenile Court also found and held that clear and convincing evidence was proven that grounds existed to terminate Father's parental rights to Kierra pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and Tenn. Code Ann. § 36-1-102 (1)(A)(iv), and that clear and convincing evidence was proven that it was in Kierra's best interest for Father's parental rights to be terminated.[3] We reproduce certain key factual findings from the order:

[3]The parental rights of Jayden's possible father were terminated as well, but that is not at issue on appeal.

-3-

[Mother - - substantial noncompliance with permanency plan]

After the children came into state custody, DCS created permanency plans for them. The permanency plans listed a statement of responsibilities that the Respondent [Mother] needed to satisfy before the children could safely be returned home. The plans gave [Mother] ample time to satisfy those requirements. The plans required [Mother] to: a. Comply with medication management, therapy, and case management at Frontier Health; b. Take medication only as prescribed; c. Destroy any unused portion of medication when prescriptions change; d. Notify DCS/CASA when prescribed new medication; e. Allow DCS/CASA to conduct pill counts; f. Maintain safe adequate housing for herself and children; g. Not allow persons with substance abuse problems, criminal history, history of child abuse, or history of violence in the home; h. If inappropriate individuals come to the home she will contact law enforcement to have them leave.

\*\*\*

The Court finds that during the times that [Mother] was being supervised she did pretty well, and completed a parenting assessment, and anger management course, and was having therapeutic visitation services; she was doing so well that in December 2008 DCS was in a position to have a trial home placement of the children. Prior to beginning the trial home placement [Mother] was arrested, and while she was in jail she used marijuana. DCS conducted pill counts of [Mother's] medication and found that sometimes she had too many pills while other times she had too few. In October 2009 [Mother] was missing twelve pills. In 2010 [Mother] claimed that she found 100 benzodiazepines in her home that she had forgotten about. [Mother] lied to DCS about the amount of pills she was prescribed.

\*\*\*

Throughout the entire custody episode [Mother] has not maintained stable housing in that: she has been homeless; she was evicted from Chadwick for unpaid rent; she was evicted from Virgil Ave for unpaid rent after DCS paid for her first months rent; she was evicted from Ridgecrest for unpaid rent after a church assisted her with rent; and at one time the children's foster parents allowed her to live rent free in a residence they owned and she was evicted from there as well.

-4-

[Mother] has not substantially complied with her statement of responsibilities on the permanency plan in that: she has not complied with medication maintenance; she has not complied with therapy and case management; she has not taken her medications as prescribed; she has not destroyed any unused portion of her medications; she has not notified DCS or CASA when her prescriptions changed; she has not allowed DCS and CASA to conduct pill counts; she has not maintained safe or adequate housing; she has not prevented people with criminal histories and/or substance abuse issues from being in her home; she did not call law enforcement when those persons were present and instead tried to hide them from DCS.

***

[Mother - - persistent conditions]

These children have been in DCS custody for over four years. DCS removed the children from their home because of [Mother's] narcotic abuse, mental health issues, and unstable living situation. The conditions that led to the removal still persist in that [Mother] continues to have inaccurate pill counts, not reporting her prescriptions, not taking medication as prescribed, and continues to have unstable housing. The only thing that [Mother] has done with any regularity during the last four years is maintain visitation with her children.

***

[Father - - abandonment by incarcerated parent]

[Father] was in jail all of the four months just before the amended petition was filed, serving an eight (8) year sentence for Selling Drugs Within 1000 feet of a School. During that four months before he went to jail, he willfully failed to visit the child, although he was able to visit, and there was no court order or any other impediment to visitation. In the same four months before he went to jail, he willfully failed to make reasonable payments toward the child's support, although on August 2nd 2004 he was ordered to pay $233 per month in child support. [Father] knew he was the father of [Kierra], he knew he had a duty to support and was at one time paying support. [Father] never filed any type of petition to exercise his parental rights to establish visitation, or custody. [Father] was so absent from his child's life that he never attempted to present himself to DCS or the Court even if he knew the child

was in DCS custody. The Court finds that during the time between the child entering DCS custody and the time [Father] was incarcerated on December 29th 2008 ten months had passed and if he was involved in her life at all he would have contacted DCS or the Court, or showed some interest in the welfare of his child, and his lack of concern is the reason that DCS could not look into his family members as placement. [Father] was located by DCS while in jail on an eight year sentence so reunification was out of the question for him as the child was five years old at the time. [Father] has engaged in conduct that exhibits a wanton disregard for the child's welfare by: not visiting regularly with the child prior to DCS custody; showed a lack of interest in the child's welfare by not monitoring her well being; being convicted of possession of schedule II controlled substance for resale within 1000 feet of a school and as a result becoming incarcerated and being unable to provide for his child or visit with his child. [Father's] criminal acts occurred on two separate occasions, December 16th and 29th 2008 and it is evident to the Court that he has no regard for the welfare of his child by committing these acts and a reasonable person could conclude that such behavior can result in incarceration and the ability to be unable to visit and support your child. [Father's] repeated criminal acts further show a wanton disregard for the children in the community by selling dangerous drugs where school children are likely to be present.

\*\*\*

[Best interests - - Mother and Father]

The Court finds that the State of Tennessee, Department of Children's Services has proven by clear and convincing evidence that termination of parental rights is in the best interest of the children based upon the following findings of fact. [Mother] has not made changes in her conduct or circumstances that would make it safe for the children to go home, in that [Mother] . . . has not complied with medication maintenance; she has not complied with therapy and case management; she has not taken her medications as prescribed; she has not destroyed any unused portion of her medications; she has not notified DCS or CASA when her prescriptions changed; she has not allowed DCS and CASA to conduct pill counts; she has not maintained safe or adequate housing; she has not prevented people with criminal histories and/or substance abuse issues from being in her home; she did not call law enforcement when those persons were present and instead tried to hide them from DCS. [Mother] has not has made lasting changes in her lifestyle or conduct after reasonable efforts by the state to help, so that lasting

change does not appear possible, in that the Department has made overwhelming reasonable efforts to assist [Mother] to cure the reasons the children came into care and [Mother] has made no efforts to establish a home or cure the reasons the children were removed, and it does not appear that she will be able to do so in the foreseeable future. Changing caregivers at this stage of the children's lives will [have] a detrimental effect on them because they are doing well in their current placement and are bonded with the foster parents, and placing them back into their mother's care would have a devastating effect particularly in light of the fact that [Mother] has not changed her circumstances or conduct.

[Father] . . . [has] not maintained regular visitation with the children, and [has] not been a part of the children's lives at all. There is no meaningful relationship between the children and . . . [Father].

***

In the four months before he went to jail, [Father] willfully failed to make reasonable payments toward the child's support, although on August 2nd 2004 he was ordered to pay $233 per month in child support. [Father] has shown little or no interest in the welfare of the children, and if the Court allowed him to remain her legal father it would inhibit her integration into a safe, permanent, and loving home. [Father] has been incarcerated for four years and has four more years to serve, he has not been a part of the child's life prior to incarceration and will be unable to be a part of her life until he is released from jail at which time he will have been absent from her life for twelve years.

(Format modified). Mother and Father appeal the termination of their parental rights to the Children and Kierra, respectively.

## Discussion

Though not stated exactly as such, Mother raises one issue on appeal: whether the Juvenile Court erred in finding and holding that clear and convincing evidence existed that it was in the Children's best interest for Mother's parental rights to be terminated. Even though Mother understandably does not dispute the grounds for termination of her parental rights to the Children on appeal, we will review them anyway. For his part, Father raises two issues on appeal, which we state as follows: 1) whether the Juvenile Court erred in finding and holding that clear and convincing evidence existed to terminate Father's parental rights

to Kierra pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and Tenn. Code Ann. § 36-1-102 (1)(A)(iv), and 2) whether the Juvenile Court erred in finding and holding that clear and convincing evidence existed that it was in Kierra's best interest for Father's parental rights to be terminated.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

> Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d

-8-

180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Although Mother does not challenge the grounds found for termination of her parental rights to the Children, we will address them. The Juvenile Court found and held that, with respect to Mother, the grounds of substantial noncompliance with permanency plan and persistent conditions were proven by clear and convincing evidence. The relevant statutory provisions are as follows:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> ***
>
> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan pursuant to the provisions of title 37, chapter 2, part 4;
>
> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> > (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> >
> > (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

Tenn. Code Ann. § 36-1-113 (g) (Supp. 2013).

The Juvenile Court made detailed findings as to this issue. The evidence in the record is that Mother has a long and troubled history of drug abuse, mental health issues, and general instability in her life. Mother has proven unable to substantially comply with the requirements of her permanency plans, and her problems remained unresolved at the time of trial. The evidence in the record on appeal does not preponderate against the findings made by the Juvenile Court by clear and convincing evidence that grounds were proven to terminate Mother's parental rights to the Children pursuant to Tenn. Code Ann. §§ 36–1–113(g)(2) and (g)(3).

We next address whether the Juvenile Court erred in finding and holding that clear and convincing evidence existed that it was in the Children's best interest for Mother's parental rights to be terminated. The relevant statutory provision is Tenn. Code Ann. § 36-1-113 (i), which provides:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

-10-

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113 (i) (Supp. 2013).

First, we acknowledge that the record reflects that Mother had a good relationship with the Children in terms of maintaining visitation. Mother also prepared meals for the Children. Nevertheless, these few positive facts are dwarfed by Mother's unfortunate and persistent problems. As found by the Juvenile Court, the Children have bonded with their foster parents. In light of this and Mother's ongoing challenges, the Children's best interest would not be served by Mother retaining her parental rights. The evidence in the record on appeal does not preponderate against the Juvenile Court's finding made by clear and convincing evidence that it is in the Children's best interest for Mother's parental rights to be terminated. We affirm the Juvenile Court's finding that it is in the best interest of the Children for Mother's parental rights to be terminated.

We next address whether the Juvenile Court erred in finding and holding that clear and convincing evidence existed to terminate Father's parental rights to Kierra pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and Tenn. Code Ann. § 36-1-102 (1)(A)(iv). As pertinent to Father's appeal, Tenn. Code Ann. § 36-1-113(g)(1) provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1) (Supp. 2013). In pertinent part, Tenn. Code Ann. § 36-1-102 provides:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

* * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2010).

Initially, we must clarify which grounds are at issue. Although this has been presented as a ground of 'abandonment by incarcerated parent,' the relevant statutory section contains multiple ways of abandonment for termination of parental rights. Parties and courts must take care not to conflate these grounds.

We first will address abandonment by wanton disregard for the welfare of the child. The record reflects that on two separate occasions in December 2008, Father participated in serious criminal behavior. Following conviction for drug-related offenses, Father now is in the midst of serving an eight year sentence. Father argues on appeal that this fact alone does not prove the ground of abandonment by wanton disregard. As this Court stated in *In re: Audrey S.*: "We have repeatedly held that probation violations, repeated

-12-

incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re: Audrey S.*, 182 S.W.3d 838, 867-68 (Tenn. Ct. App. 2005). While a parent's criminal behavior does not automatically constitute wanton disregard for the welfare of a child, it certainly may constitute such wanton disregard under the appropriate circumstances. Both the severity and frequency of the criminal acts are factors to be considered in determining whether a parent's criminal behavior constitutes wanton disregard for the welfare of a child.

In the instant case, Father's criminal behavior was serious and detrimental to his child's welfare. As a result of Father's crimes, Father has rendered himself absent from Kierra's life for most of her childhood. It also is noteworthy that Father's acts were committed on two separate dates. Father's criminal behavior was, therefore, repeated, and this repetition served only to increase the jeopardy to Kierra's welfare.

The evidence in the record on appeal does not preponderate against the findings made by the Juvenile Court by clear and convincing evidence that grounds were proven to terminate Father's parental rights to Kierra pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102 (1)(A)(iv). We affirm the finding of abandonment by wanton disregard.

The Juvenile Court also found that Father had willfully failed to visit and support Kierra and terminated his parental rights on this basis, as well. The Juvenile Court stated relative to this issue:

> During that four months before he went to jail, he willfully failed to visit the child, although he was able to visit, and there was no court order or any other impediment to visitation. In the same four months before he went to jail, he willfully failed to make reasonable payments toward the child's support, although on August 2nd 2004 he was ordered to pay $233 per month in child support. [Father] knew he was the father of [Kierra], he knew he had a duty to support and was at one time paying support. [Father] never filed any type of petition to exercise his parental rights to establish visitation, or custody. [Father] was so absent from his child's life that he never attempted to present himself to DCS or the Court even if he knew the child was in DCS custody. The Court finds that during the time between the child entering DCS custody and the time [Father] was incarcerated on December 29th 2008 ten months had passed and if he was involved in her life at all he would have contacted DCS or the Court, or showed some interest in the welfare of his child, and his lack of concern is the reason that DCS could not look into his family members as

-13-

placement.  Father was located by DCS while in jail on an eight year sentence so reunification was out of the question for him as the child was five years old at the time.

We have discussed 'willfulness' in the context of failure to support:

This court has consistently held that the term willfulness as it applies to a party's failure to support a child must contain the element of intent.  *In re Swanson*, 2 S.W.3d 180, 188–89 (Tenn. 1999).  Indeed, "defining abandonment as the mere non-payment of support [is] unconstitutional because this language creates an irrebuttable presumption of abandonment, irrespective of intent."  *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003) (citing *In re Swanson*, 2 S.W.3d at 188).  The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code."  *In re Audry S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005).  "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent."  *Id*.  "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing."  *Id*. at 863–64.  Additionally, " '[f]ailure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no justifiable excuse for not providing the support.' "  *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003–02247–COA–R3–PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)).

*In re: Dylan H.*, No. E2010-01953-COA-R3-PT, 2011 WL 6310465, at *6 (Tenn. Ct. App. Dec. 16, 2011), *no appl. perm. appeal filed*.  Respectfully, the Juvenile Court's findings relative to these issues of "willful" conduct are conclusory and without sufficient specific findings relative to the "willfulness" of Father's failure to visit or support.  It is not enough that a parent failed to visit or support in this context.  Rather, there must be clear and convincing evidence revealing willful conduct.  We are of the view that, in Father's case, the limited evidence does not prove the requisite intent for the grounds of abandonment by willful failure to support or visit.  Therefore, we reverse the Juvenile Court on these grounds. However, as we affirm the Juvenile Court as to the ground of abandonment by wanton disregard, and, as only one ground is required for termination of parental rights, we move on to address Kierra's best interest.

The Juvenile Court made findings relative to this issue of Kierra's best interest which, apart from any reliance on willful failure to visit or support as discussed above, we

-14-

find to be amply supported by the evidence. As a result of his repeated acts of serious criminal behavior, Father will be in no position to parent Kierra any time in the near future. Kierra needs and deserves stability.

The evidence in the record on appeal does not preponderate against the Juvenile Court's finding made by clear and convincing evidence that it is in Kierra's best interest for Father's parental rights to be terminated. We affirm the Juvenile Court's finding that it is in the best interest of Kierra for Father's parental rights to be terminated.

In summary, we affirm the judgment of the Juvenile Court in its entirety with respect to Mother and the termination of her parental rights to the Children. We reverse the Juvenile Court as to its findings of willful failure to support and visit as grounds for terminating Father's parental rights. We, however, affirm the Juvenile Court in its termination of the parental rights of Father to Kierra on the basis of abandonment by wanton disregard. We find and hold that it is in the best interest of the Children for Mother's parental rights to be terminated. We also find and hold that it is in the best interest of Kierra for Father's parental rights to be terminated.

### Conclusion

We affirm the judgment of the Juvenile Court terminating Amber B.'s parental rights to Jayden B. and Kierra B. and Miguel C.'s parental rights to Kierra B., and remand this cause to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Amber B. and Miguel C., and their surety, if any.

_____
D. MICHAEL SWINEY, JUDGE